IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHERYL HARRIS, | * |
| | * |
| v. | *  Civil No. JKS-09-3396 |
| | * |
| MICHAEL J. ASTRUE | * |
| Commissioner of Social Security | * |
| | * |

# MEMORANDUM OPINION

Plaintiff Cheryl Harris brought this action pursuant to 42 U.S.C. § 405(g) for review of a final administrative decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act), 41 U.S.C. §§ 401–433, and §§ 216(i) and 223(d), respectively. Both parties' motions for summary judgment and Harris's alternative motion for remand are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Harris's motion for remand will be granted, her motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be denied.

1. **Background.**

Harris protectively applied for DIB and SSI benefits on November 13, 2006, alleging onset of her disability on July 12, 2006. (R. 91–93, 94–96). Both applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on March 11, 2009, at which Harris was represented by counsel. (R. 17). On June 2, 2009, the ALJ found that Harris was not disabled within the meaning of the Act, (R. 16), and on October 22, 2009, the Appeals Council denied her request for review. (R. 1–3). Thus, the ALJ's determination became the Commissioner's final decision.

## 2. ALJ's Decision.

The ALJ evaluated Harris's claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520. First, the ALJ determined that Harris had not engaged in substantial gainful activity since July 12, 2006. (R. 11). At step two, the ALJ concluded that Harris suffered from obesity, cervical disk disease, bilateral carpal tunnel syndrome, rheumatoid arthritis, and osteoarthritis of the knees, all of which were severe impairments. (R. 11). At step three, the ALJ determined that Harris did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 11). Further, the ALJ found that Harris had the Residual Functional Capacity (RFC) to perform sedentary work, but that she was able to (1) lift or carry five pounds frequently and ten pounds occasionally; (2) stand or walk for at least two hours in an eight-hour day; (3) sit for six hours in an eight-hour day; (4) push or pull less than ten pounds with both upper extremities; (5) occasionally climb stairs or ramps and balance, bend, stoop, crouch, and squat; and (6) grip with the left hand and finger. (R. 13). However, the ALJ found that Harris could never climb ladders, ropes, or scaffolds, could never kneel or crawl, and that she must avoid concentrated exposure to hazards. (R. 13). The ALJ also found that Harris had a moderate limitation in her ability to concentrate, maintain attention for extended periods of time, and keep up a pace due to pain and medication side effects. (R. 13). At step four, the ALJ found that Harris was unable to perform any past relevant work. (R. 15). At step five, the ALF found, based on testimony from a vocational expert (VE), that jobs exist in significant numbers in the national economy that Harris could perform. (R. 15). As a result, the ALJ ultimately determined that Harris was not disabled within the meaning of the Act. (R. 16).

### 3. <u>Standard of Review.</u>

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision when it is supported by substantial evidence. *Id.*

### 4. <u>Discussion.</u>

Harris makes two allegations of error. First, she claims that the ALJ erroneously assessed her RFC. Second, she claims that the ALJ erroneously assessed her subjective pain complaints.

A. RFC Assessment.

RFC is the most work an individual can do for 8 hours a day, 5 days a week, despite that individual's determinable impairment and any related symptoms, such as pain. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); SSR 96-8p, 1996 SSR Lexis 5, at *5. The ALJ must make the RFC determination after considering all of the relevant medical and non-medical evidence in the record. 20 C.F.R. §§ 416.920(e) and 416.945. The Social Security Regulations provide the following guidelines outlining the way in which an ALJ should determine a claimant's RFC:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for

> work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(b) and 416.945(b). When determining an individual's RFC, the ALJ must perform a function-by-function assessment based upon the claimant's functional limitations and ability to do work-related activities. SSR 96-8p, at *3. The ALJ must address both the exertional and non-exertional capacities of the individual. SSR 96-8p, 1996 SSR Lexis 5, at *15. In order to do work at a given exertional level, the individual must be able to perform substantially all of the exertional and non-exertional functions required of work at that level. SSR 96-8p, 1996 SSR Lexis 5, at *9.

The ALJ's evaluation also must include a narrative discussion describing how medical facts and non-medical evidence support the ALJ's conclusion. *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271 (D. Md. 2003); SSR 96-8p, 1996 SSR Lexis 5, at *19. The RFC assessment must "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." SSR 96-8p, 1996 SSR Lexis 5, at *20. Moreover, "in instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations." *Id.*

Here, Harris contends that the ALJ failed to provide a function-by-function analysis of her ability to perform the physical and mental demands of work. Specifically, Harris claims that the ALJ failed to set forth a narrative discussion describing how the evidence supported each conclusion, failed to discuss her ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, failed to describe the maximum amount of each work-

4

related activity that she could perform based in the evidence in the record, and failed to explain how any material inconsistencies or ambiguities in the evidence were considered or resolved. This court agrees.

The ALJ failed to perform a sufficient function-by-function analysis of Harris's ability to perform substantially all of the exertional and non-exertional demands of sedentary work. The ALJ simply made a general finding that Harris was able to perform sedentary work with lifting, push/pull, sit-stand-walk, and other movement limitations, but failed to further describe how she would meet the requirements of that exertional level or how she would perform sustained activities in an ordinary work setting. (R. 13).

More significantly, the ALJ also failed to set forth a narrative discussion or cite the medical and non-medical evidence supporting his conclusion. Instead, the ALJ simply concluded that Harris's allegations and testimony regarding her symptoms were not consistent with or supported by the objective medical evidence, and failed to elaborate any further. (R. 14). Moreover, the ALJ did not specifically cite or discuss the opinions of Harris's treating physicians, Drs. Richard M. Cirillo and Paul H. Griffith, III, both of whom consistently documented the multiple surgeries; back, neck and shoulder pain; hand and finger numbness; fibromyalgia; rheumatoid arthritis; leg pain; sleep disturbances; and inability to grip about which Harris testified at her hearing. (*See* R. 305–08; 311–46). The ALJ also failed to specifically discuss the potentially aggravating effects of Harris's obesity on her other impairments, despite stating that he took the obesity considerations of Social Security Ruling 02-1p into account. (R. 13). Instead of engaging in the requisite analysis and discussion, it seems that the ALJ based the entirety of his opinion on his observations of Harris at the hearing, stating simply that "her verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling

5

limitations." (R. 14). While this court acknowledges Harris's testimony that she had not used pain medication in the two days prior to the hearing, R. 30, and that the ALJ had the opportunity to observe Harris at a moment when her pain symptoms should have been at their worst, the ALJ's observations alone were not sufficient to disregard the opinions of Harris's treating physicians.

B. Subjective Pain Complaints.

Harris claims that the ALJ applied an improper standard in evaluating her assertions regarding the intensity, persistence, and limiting effects of her pain. Harris also claims that the ALJ failed to perform a proper assessment of her credibility. When evaluating whether a person is disabled by subjective symptoms, an ALJ must follow a two-step process. *Craig v. Charter*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine that objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant makes this threshold showing, the ALJ must evaluate the extent to which these symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must also assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown solely by objective medical evidence. SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* The ALJ's opinion should be given great weight upon review because he has had the opportunity to observe the demeanor and determine the credibility of the claimant.

*Shivley*, 739 F.2d at 989–90.

The ALJ found that Harris's medically-determinable impairments could reasonably be expected to cause the symptoms alleged, but that Harris's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (R. 14). While the ALJ was correct in finding that Harris satisfied this threshold inquiry, his conclusion that her subjective complaints of pain were not credible is not supported by substantial evidence.

In determining Harris's RFC, the ALJ did not even discuss the opinions of Harris's treating physicians, which objectively supported her subjective pain complaints. The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician was a specialist." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)). In every one of the treating physicians' examination reports, Drs. Griffith and Cirillo documented Harris's continued complaints of pain over a 34-month period, which were not alleviated despite various forms of treatment. (R. 311–46). In addition, the physicians and specialists to whom Harris was referred, as well as the physicians who evaluated Harris's RFC, also consistently documented Harris's complaints of pain. (R. 182, 213, 217, 220, 246 283).

In disputing Harris's credibility, the ALJ generally referred to Harris's "activities of daily living, the medical and other evidence on the record, and the findings of the State Agency and consultative examiners" as evidence that Harris's "subjective complaints and alleged limitations [were] not fully persuasive." (R. 14). The ALJ also concluded that Harris's verbal responses and overall demeanor "were not suggestive of a person who is experiencing disabling limitations,"

and that there were no reported continuous side effects of her medication. (R. 14). However, the ALJ disregarded the continuous documentation of pain symptoms by Harris's treating physicians, as well as the overall ineffectiveness of the treatments and surgeries that Harris underwent. (R. 311–46). The ALJ also disregarded statements by Harris's treating physicians, as well as the physicians to whom she was referred, which explicitly stated that Harris's symptoms definitely interfered with her activities of daily living and her ability to return to her work status. (R. 208, 273). One of the physicians who evaluated Harris's RFC also admitted that she had trouble evaluating Harris's RFC because the examiner had never dealt with the combination of impairments that Harris described. (R. 217). However, the fact that an RFC examiner was unable to classify Harris's subjective pain complaints does not negate their existence or her credibility.

**5. Conclusion.**

For the foregoing reasons, Harris's motion for remand will be granted, her motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be denied.

Date: December 27, 2011                                              /S/
                                                                                    JILLYN K. SCHULZE
                                                                                    United States Magistrate Judge